Good morning. May it please the court. My name is Molly Elkin, and I'm very proud to be here today on behalf of the bravest of America's men and women, the first responders, the frontline firemen, firefighters of the Fairfax County Fire Department. This case was brought pursuant to the Fair Labor Standards Act, and the most basic fair labor standard in this country is that when we work, we get paid. And when we work overtime, we get paid time and a half. That's the most basic fair labor standard. And if you're an employer and you want to deny me that fair labor standard, you must prove in this circuit by clear and convincing evidence that the employee is exempt from the overtime laws. This entire case turns on primary job duty. What is the primary job duty of these fire captains? That's the number one issue. And number two issue is whether that primary job duty can be determined at summary judgment. The answer to the first question, what is the primary job duty? The answer is clear on the undisputed record. Their very most primary important main principle major duty is first response. They have no. I'm so sorry, but can I just back you up one step? Sure. So are you reading this first responder regulation the same way Department of Labor does? All it does, it really doesn't do anything. It just says it always was primary duty. It's still primary duty. We are reading it the same way. It is the argument that we advanced in the lower court. If you find, the Department of Labor says, if you find that the primary job duty is first response, then the employer cannot, as a matter of law, meet the executive exemption standards or the administrative exemption standards. Maybe my question is really more for Department of Labor, but I'll ask you too. I mean, it doesn't say that they're exempt if their primary duty is not management or if their primary duty is not the administrative work. It says because it doesn't say if. I don't know. I just don't understand this reading of the regulation. So you would read, Your Honor, the primary. I mean, that helps us, I would think. If you want to read it out of the regulation, you can. But I think we're sort of stuck with the Department of Labor's interpretation of its own regulation and that you still look to primary job duty. That is the argument that we advanced. But I tend to agree, as a matter, as a practical matter, how can their primary job duty be anything else? That's the way, I mean, I just feel like the most natural reading, and I won't take much more of your time on this. This is really a question for DOL. But it says they're not exempt because their primary duty is not the performance of work directly. It doesn't say if, it just says because. The most natural reading is that DOL made a decision that if you meet the first part of this, if you, in fact, put out fires, that is your primary duty. Your Honor, we would very happily go with that. But if we're stuck with the Department of Labor's interpretation of its regulation, then I think as a matter of law, based on just what you said and the facts in this case, that's what they do. They go out on every single fire call, these captains. Every single one. I don't think this court needs to look any further than three words. Minimum staffing complement. The fire captains make up the minimum staffing complement for the engines that they're assigned to. The truck does not roll without a captain on it. So the Department of Labor did come forward and submit a brief in response to your Honor's request that it go ahead and do so to interpret its regulation. And the Secretary submitted one and said very loudly and plainly that the lower court got it wrong, the lower court misapplied the first responder regulation, the lower court failed to apply the regulation to the facts of the case, and that the lower court's decision must be reviewed. And of course we agree with that ruling and their opinion about that. DOL did clarify a number of things. One is, as your Honor, Judge Harris, you pointed out, that they are saying that if you determine the primary job duty is first response, then the captains win. DOL explained why they put this regulation into the 2004 revisions to the regulation, and that was to clarify that, hey, all you courts out there that have concluded that fire captains are non-exempt because they are out riding trucks and putting out fires and providing emergency care, you got this right. So they meant to codify that provision. DOL also explains that the first responder regulation doesn't sort of put forth an unlimited principle that every single person who may, in a fire department, go to a fire, it doesn't make them all non-exempt. And that's the argument that we advanced in the lower court. The lower court ignored it and concluded that, oh, based on the plaintiff's argument, that even the fire chief would be non-exempt because from time to time he goes to a fire scene. That was not our argument. We think that there are positions in the fire department where the employees are probably exempt executives. And we pointed out, for example, the deputy chiefs. The deputy chiefs are toned out to maybe 11 different types of major incidents. That's it. They work the 24-hour shifts that the captains work. But they're toned out to, you know, fires or explosions at Dulles Airport and the Meriwether Post Office. But that's not the job of the fire captains. The fire captains are toned out to every single type of call there is, from an illegal barbecue to a trash fire. They're going. And they're going with their men. They're putting on their turnout gear. They're putting on their SCBA. And they're going. And they go to these calls. And when they're there, they are not immune from injury or pain or death because they're somehow management. They undertake the same kind of risks every single day as the men and women that they supervise on the fire scene. And you can look no further than the injury reports that we submitted. It's in the joint appendix. There's 200 injuries in the last couple of years for fire captains. They are no less immune to injuries than the women and men that they supervise. And there's not a white-collar executive out there, I wouldn't think, who is getting lacerations and contusions. And cardiac abnormalities from doing fire suppression and training and physical fitness. This regulation, the exempt managerial white-collar regulations, were not meant to cover these fire captains. DOL also points out that the physical fitness and the other training that the captains do alongside the non-exempt workers, that's not a management function. That's a function of firefighting. Can I ask you about the physical fitness training? I just want to make sure I understand the facts and the record. Are we talking about two different kinds of training? Do they do operational readiness training, sort of what you do when you get to the scene, and then on top of that, physical fitness training? That's exactly right, Your Honor. They spend one to two hours a day doing physical fitness training. What you and I would think of as planks and lifting weights and running and cardio. They do one to two hours alongside their crew. Everybody's doing what they need to do to stay fit. And why do they need to stay fit? So that they can haul us out of a burning building or use the jaws of life and get us out of a car. So that's not a management function. The other type of training, Your Honor, is the emergency response type of training, where they're going to be training on new medical equipment, or a better way to do a search and rescue, or to work in confined spaces, or hazmat things. And how much is that every day? That's about two hours every day. Okay. So, I mean, the record is not that clear about, you know, minute by minute, how we're spending, how your captains are spending their time. But it seems pretty clear that the biggest single block of time is going to this training, right? Well, the biggest single block of time in the fire station would be the two types of training, the physical fitness as well as the emergency response type of training. So that's about four hours a day. And that would, I assume your argument is that has to count as non-exempt time, because it is directly in furtherance of the first response. We say absolutely put that in the firefighting bucket. And if you're going to do the math on the firefighting bucket, we put that in the firefighting bucket, which is non-exempt work. We obviously put in responding to calls into that bucket. And according to the county's expert witness who did some analysis of the algorithm call-out data, they say on average it's an hour and a half a day going out to calls. Obviously, it can be 15 hours. I just have one of my clients came in here after working 72 hours in the Storm Jonas. So it depends on the situation. But on average, apparently, it's an hour and a half responding to calls. So there you're at five and a half hours. And then, you know, they sleep there. This is not an office job. This is not non-manual work. So they're sleeping there. So this question of primary duty and what their primary duty is, is a factual one, right? Your Honor, we think that it's- All this certainly sounds like a factual question. And the district court didn't even consider it appropriately in the first place. Two things. One is we think under this court's law, in fact, a decision just released in December of last year in the GEICO case, Colloran v. GEICO, Judge Traxler, I believe, wrote the opinion in that. I think that what the court holds is that in FLSA exemption cases, the question of how employees spend their working time is a question of fact. The ultimate question of whether exemption applies is a question of law. So here, I don't think there's a dispute on the facts about what they do. And that's why it could be- this case should be decided on the law. And we do not think the Department of Labor is owed any deference whatsoever with respect to their opinion about how Rule 56 works. That's not their jurisdiction. That's your jurisdiction. And we think that you have the obligation to decide this case as a matter of law because the facts about what they do are not in dispute. The county did not dispute- the county did not dispute the amount of time they spend doing physical fitness, the amount of time they spend training, the amount of time they spend sleeping. I mean, what are these captains doing while they're sleeping? Are they filling out performance appraisals? Are they there sleeping at the fire station so that they can do discipline? They're sleeping at the fire station so that when the tone goes out, they can put on their equipment and their SCBA and go to harm's way. That's why they're sleeping at the fire station. And we think the sleep time needs to be non-exempt time. So you add another eight hours if they're lucky. The cooking, the cleaning, all of that is non-exempt. All of that is non-exempt. So what are we left with in terms of the exempt duties? I think they said the- we did some math and this was before the lower court. There are 2,912 hours that they're scheduled to work without working any additional shifts. Of that time, the plaintiff captains testified, and this is unrebutted, they spent a maximum of 12 hours a year doing performance appraisals. Is that a management duty? I don't even know. The Department of Labor in Mullins said it wasn't. It said it was not a management duty unless the performance appraisals are relied on for promotions, and the undisputed facts here are that they're not. But just assuming that performance appraisals are a management duty, that is .4% of the time. And of course, some captains testified they only spent five to six hours a year doing it. And of course, the lieutenants, who are right below the captains in the chain of command, they're non-exempt. They get overtime pay. They do performance appraisals. So clearly this performance appraisal thing is not sort of the focus of a manager. The other duty that they point out as a management duty is discipline. And the record is clear that these captains have no authority whatsoever to issue even a verbal reprimand for one of the men coming in late without taking it up the chain of command to the battalion chief and to the deputy chief to get approval. One captain testified he's just the delivery boy when it comes to discipline. Yes, they have to report infractions, but so do the lieutenants and the technicians and the firefighters. It's part of their job duties. It's part of the chain of command in this paramilitary organization to report an infraction. But in terms of issuing discipline, they have no authority to do it without the deputy chief approving it. So we had 21 discovery plaintiffs in this case. Eleven, I believe, of the 21 issued no discipline during the entire recovery period. So of the 10 or so that did, it was 0.1% of their time over a year. Three hours a year. How can that possibly be their primary job duty? The captain twos, their only category of captains who do station, they call them wish lists. The county called them budgets. But there's no evidence in the record whatsoever that the station captains are doing any budgeting. A budget is you get a pot of money or you ask for money and you figure out how to allocate it. They have no authority to do that. They have no authority to requisition supplies. They have no purchasing authority. What they do, the captain twos, is at the end of the year they put together a spreadsheet. You know what? We need new mattresses. We need new dumbbells. We need a new table. Whatever it is. They say the things that they want or need, how much they think it costs based on a search on the Internet, and then somebody above them, not even in operations, determines whether or not they'll get it. That's not budgeting. That's a wish list and it takes about three hours a year. So that would be 0.1% of their time. The only other sort of management duty that we said maybe the captains do, we would agree that the captain twos update station policies, but this is really just a conglomeration of the policies that are put out by the chief. But they make sure that there's a book put together in the, you know, like a binder put together with all the updated policies. They spend about four hours a year doing this. 0.1% of their time. So it's 1% total annual of their time doing these management functions, even if they are management functions. I think that's a stretch. And you're saying that's not disputed. That's not disputed. That is not disputed. So the important also, I think the most important thing that's not disputed is that the plaintiffs, the captains in this case, spend the exact same amount of time running emergency calls as the non-exempt subordinates that are getting FLSA overtime pay. That is not in dispute. They're there to be the superhero firemen, to lead the men into burning buildings, to go into harm's way with their troops, to move things around in harm's way. They have hands on hose. They're ventilating roofs. They're kicking things around out of harm's way. They're throwing ladders. They're telling their guys throw the ladder. They're telling the guy pull the hose over there. And their primary job duty is to make sure they can get the citizens out of harm's way and to rescue property in Fairfax County. That's what they do. That's what they're paid to do. That's their primary value to the County of Fairfax. I see my time is running out. I would also just note that the safety officer captains and the EMS captains, the county claimed administrative exemption for them. And the court below just said that they were executive employees. An exemption that was not even claimed by the county. And based on this court's ruling in Geico, there is no way that the EMS captains or the safety officers are administrators who perform work that is directly related to the business operations of the employer. So, thank you. You've got some time remaining to reply. I do have time? Not now. Okay. All right, Ms. Marcus. Good morning. May it please the court. My name is Sarah Marcus and I represent the Secretary of Labor. Your Honors asked the Secretary to explain how his regulations apply to the facts of this case. As we explained in our brief, whether the executive or administrative exemption applies to a particular employee depends on the primary duty of that worker. And as Judge Harris has already asked, the first responder regulation clarifies the way that that rule operates in this particular industry. It doesn't wholly change the analysis. There's still a question of what is the primary duty. It makes plain that if the primary duty is emergency response, the employees are not exempt, whereas if it is management, then the executive exemption would apply. Does everything this says because, I should put in it, cross that out and write the word if? Well, I think it's using because because it's talking about the context of looking at someone who is a firefighter or a police officer, someone who, you know, for most employees this isn't going to be a difficult question. Many fire department employees simply are firefighters. They don't have supervisory responsibilities. They're out in the field, performs work such as preventing, controlling or extinguishing fires of any type. Does not qualify as exempt because their primary duty is not management or because I mean, I just don't I know about our deference. I really do. But this just seems like a rewrite of the regulation. Well, Your Honor, I would point you to the preamble, which provides a little more context and more discussion of the case law that that this clarification arose out of it. The text of the regulation trumps the preamble, right? Well, I don't think it's inconsistent. It's just that the preamble provides sort of more background about what the regulation is trying to convey. And the regulation is discussing sort of the first set of employees discussed in the preamble, which is the actual front line firefighters. And they are not doing management. They are performing emergency response. The preamble goes on to explain there are cases that address upper level management of people who work at the higher levels of the fire department. No one is saying that the fire chief, even if he goes to certain emergency scenes and occasionally performs emergency response, is not exempt. And there's sort of a clear answer for many firefighters and then a clear answer for people at the top of the hierarchy. And what we have here is that of employees who exist in the middle and have essentially hybrid jobs. And you could see one set of their functions as most important or the other. And my question is, which is it? I will let this go in a minute, but it wasn't that long ago. I remember the 2004 amendments and I remember that they were incredibly controversial, right? It was right after 9-11 and they were saying, well, this is outrageous. This would take away overtime from the people who went into the buildings in New York. And so DOL kind of said, oh, no, no, this is not about them. Here's your regulation. Like they needed to shut that down. And it just seems kind of bait and switch now to say, well, people who run into burning buildings may or may not be exempt. I thought the whole point was if you run into burning buildings, this is not about you, these amendments that are cutting back on overtime protection. I may be misremembering it. I don't know the details of the hearings, but that is certainly the case for most of the employees who run into burning buildings. Absolutely. These seem to be a somewhat unique set of employees who have both management functions and emergency response functions. And, of course, the argument that we're making is that the district court was incorrect to grant summary judgment to the county here and that these workers should have their chance to prove to a fact finder that, in fact, the most important thing that they do is emergency response. And we do think that's a reasonable view of the facts in the record. Because you think the facts are in dispute. We think the question of what is the primary duty is a fact that is in dispute. Yes. Although there are many undisputed facts that sort of go towards that ultimate analysis, the relative significance of the duties, the question about what's important is factual and is clearly something that the parties don't agree on. And we think that they're both presenting a case that a reasonable jury could look could could could come to either conclusion. One last question about the preamble. I'm sorry. There is that thing about the sole charge regulation where one of the proposed one of the original proposals would have made it easier to apply the executive exception to anyone who is in sole charge of like a freestanding facility. And the firefighters unions came in and said that can't be right, because that would mean that a supervisor, a shift supervisor might suddenly become exempt. And that can't be right. And DOL agreed and said, right, that's obviously firefighters, shift supervisors are not supposed to be covered. And so they took it out. I mean, does that have any bearing on this case, at least as to the shift commanders? Your Honor, I apologize. I am not familiar with that piece of the preamble, so I can't speak to it. But it does seem not inconsistent with the position that we're taking, that there shouldn't be much like with the highly compensated employee exemption. There should be no shortcut here. If it's possible that someone's primary duty is emergency response. There should be an analysis of whether, in fact, that's the case. And if it is, then they are not exempt, even if they also have some supervisory functions. Yeah. All right. Thank you, Your Honor. All right. Let's hear from Fairfax County. Good morning. May it please the court. My name is Sona Rewari and I am proud to represent. You might want to pull that. Thank you. Thank you. I represent the county of Fairfax, Virginia. Your Honors, the central issue in this case and the issue that was framed by the plaintiffs from the very get go is, did the first responder regulation change the county's fire department captains into non-exempt employees? And we say change because there's no real question that the captains were properly classified as exempt under the law that existed before the first responder regulation was adopted in 2004. The pre-2004 case law in this circuit had found that employees with duties exactly like these captains, managing a fire station or performing work that directly relates to management and policies of the fire department, were exempt executive and administrative employees. That precedent included Hartman v. Arlington County, which was affirmed by this court. IAFF v. City of Alexandria, also affirmed by this court. And West v. Anne Arundel County, which was decided by this court and affirmed summary judgment for captains, reversed the summary judgment that had found that lieutenants were not exempt. And so in order to be able to argue that the district court here got it wrong, plaintiffs need to show that this prior case law was overturned by the first responder regulation, that that regulation was a change of law in this circuit and in the country, and they simply have not shown that. And they cannot, because we know from the Department of Labor's position that this was not a change of law. And we know this because the Department of Labor called it a clarification in 2004 in the preamble. They called it a clarification in 2010 in Mullins. They're calling it a clarification now. And what was it clarifying? It was clarifying that the regulations that were being proposed in 2004, which updated all the FLSA regulations that defined the exemptions, how these would apply to fire and fire police and rescue workers. The first responder regulation was not even part of the initial notice of proposed rulemaking. It was added in the final rule to clarify the concerns that you, Judge Harris, identified that people were concerned that all of a sudden the line that had been in the law all along was somehow getting moved. And the department said, we are not moving the line. The line is where it was. Most courts have already found that people whose primary job duty is to fight fires are exempt, and people whose primary job duty is not just fighting fires, their managerial, are not exempt. And they cited, this is very telling, they cited the West decision from this court. They cited it in 2004, they cited it in 2010, and they're still citing it now. And if you look at West, there is no way that you can distinguish the captains in the Fairfax County Fire Department from those plaintiffs. And you can't distinguish them from Hartman or IAFF either. So if the law didn't change, then what makes these captains different? And there's absolutely nothing that does. And what does the First Responder Regulation mean? We know what it means. It means supervising in the field is not management. And filling out reports or paperwork based on fieldwork isn't management or administrative. But to determine whether an employee is exempt, you must consider what are their duties outside the field? What are they doing when they're back in the station? Are they cleaning the engine or are they running the station? And these captains, the shift and station commanders, it is undisputed, run the station. There is no one else in charge of the station. They get a weekly or once or twice a week visit from the battalion chief, and that is it. Let me ask, this is a hypothetical. Sure. If the firefighting activities were so extensive at a station or for the fire department that 75 percent of their time was spent fighting fires and the captains are out there and they're required to be there, would your argument be the same? My argument would say then you need to look at what, you know, you would do the four factors of primary duty analysis. I would submit that 75 percent, you would never reach that number in Fairfax County or in most districts because. It's a hypothetical. Sure. You've got to take the premise I gave you. I understand. And I think that it would be a closer question, certainly. These captains. The reason I ask you that is it seems to me that so much of this question is determined by fortuitous circumstances. How many fires there are that we're going to make a decision or expect to make a decision on how they spend their time when the time not spending fires is fortuitous. Well, and your honors, the reason we did the analysis in this record the way that we did, where we said we'll give you those 90 minutes, we won't argue about whether that 90 minutes is exempt or not, was to make it easier. But what the Department of Labor said in the preamble, in the cases that were cited there, including West, those plaintiffs spent far more time out in the field fighting fires. And what the Department of Labor said was supervision at the scene is still supervision. It is still management. It's that it can't be the only thing that makes you a manager. That's what they were concerned about, that directing work in the field is not management when it's performed as part of just regular firefighting work. You can't establish an exemption, as they tried to do in Mullins, with work that only happens in the field. And as much as there's criticism of the district court in this case, Judge Hilton applied the reasoning of the first responder in the IAFF case 15 years before there was a first responder regulation. In that case, he had sergeants from the police department, he had lieutenants in the fire department, and he had captains. And he said supervising, while an important part of management, is not management. The lieutenants who only supervise in the field are not exempt. The captains who run the stations are exempt. That was the line that the Department of Labor confirmed in 2004. We're not moving that line, is what they were telling the public. And if you look in the preamble, what the Department of Labor said was that this was added in response to concerns by the unions. The Fraternal Order of Police states, mentioned specifically in the preamble, that they were concerned about what effect this would have. And as Ms. Elkin alluded to, this court just decided last month in the Calderon case that the first responder regulation doesn't create an industry exception that we just bypass the primary duty analysis. If you go out to fires, you don't need to do a primary duty analysis. You're non-exempt. If there was such a categorical rule that was being adopted, we certainly would have heard about it in the 11 years that the first responder regulation has been out there. We haven't heard that because the Department of Labor hasn't interpreted it that way, and it would not have been stuck in as part of the final rule but not in the notice of proposed rulemaking because that would have been a tremendous change in the law if that had happened. The fact that they've cited West consistently since 2004 confirms that the department still sees the line where it is. And if you say anyone who responds to fires, well, that's all of operations. That's 1,200-plus people all the way up to the assistant chief and fire chief that respond to fires. The only way that you can conclude whether someone's primary job duty is responding to fires or managing away from the station is you have to do the four-factor analysis. You have to look at how they spend their day. You have to look at what is the principal importance. What is the principal value? In terms of how they spend their day, are you conceding that the time spent with physical fitness or preparedness training, that that kind of goes in the firefighting bucket? No, we're not conceding that. And two things I want to clarify. First of all, physical fitness is a requirement that applies all the way up to the fire chief. Everyone in operations engages in physical fitness. The difference for the captains as opposed to the firefighter is the captains get to decide in their station when everybody will engage in it. They supervise their staff in doing it. They have to do it, right? Yes, and again, all the way up to the fire chief, everyone's required. Can you just explain to me that just as a matter of common sense, if you're training to be physical fit while you are doing first response, the part where you run into the building, how does that not count in the firefighting first response bucket? Because the fire chief does it, and they agree that the line... The fire chief, I assume, if we're now in the primary duty thing, the fire chief has lots of obviously managerial duties that are going to take care of him. I don't care what he's doing with the rest of his time. For people where we're looking at how they spend their time, how can this not count as first response time? You don't have to do it but for the fact that you're going to need it when you get to the scene of the fire. Well, to the extent... Yes, it's sort of managerial, but because it is directly related to what you do at the scene of the first response, it can't count against you in terms of management. And even if you do, that would fall under the rule of concurrent work, which for managers, the Department of Labor has a special regulation that recognizes that managers can concurrently perform exempt and non-exempt work. And the Fourth Circuit, this court talked about this in Grace. In the Grace v. Family Dollars case, Grace said she spent all the time waiting on customers, sweeping the floors, doing all of these other things, and the court said, yes, but the difference here is that you get to decide when to do that, and that is what part... That's a concurrent duty. Just again, I hate to pick on the text of the regulation, but we're all agreeing that the one thing, apparently the only thing it means is that you're not exempt merely because you direct the work of other employees in the conduct of an investigation or fighting a fire, right? But that follows, it says, thus for example. It has to be an example of a larger principle. And why isn't the larger principle that stuff you do in direct furtherance of your first response, the first response part of your job, doesn't count as management? Because the fire department and the police department, they don't do anything else. They don't have any other function other than first response. There's no first responder, second responder, and third responder inside the fire department. All of operations is trained for the singular purpose. I agree, and I think even when the fire chief is doing the physical fitness training, that counts as part of his first response duties. I understand that he is nevertheless a manager because he also runs the fire department. These guys don't also run the fire department, so it matters to me much more that we count the time doing physical training and site preparedness that that counts as their first response time. Let's put the fire chief to one side. The Department of Labor presumably could have drawn the line somewhere else. They could have said the line is anyone who's in a station. The line that was drawn in the preamble and in the regulation is field. What happens in the field? And the station is not the field. It's a standalone facility. So what happens in the station? And they said this in the preamble. Operational readiness is an exempt task. So why would physical training and other training not fall in the bucket of operational readiness? Ensuring the operational readiness of your team, your staff, your personnel, is considered an exempt task. That is in the preamble. And, again, if you look at the types of tasks that they said, here's what you look at to distinguish management, the managers, from the ordinary firefighters. What the Department of Labor said in the preamble was the managers, in addition to responding to fires, they also evaluate personnel performance, which these captains do, enforce and impose penalties for violations of the rules and regulations, again, which these captains do, make recommendations as to hiring, promotion, discipline, or termination. These captains are involved in the discipline process, which is how you get terminated out of the fire department. Because they're civil service, you can't just fire somebody without just cause. Discipline is a way that you lose your job in the fire department. Coordinating and implementing training programs. Your Honor asked about the two hours of training that happens. They don't go somewhere to do the training. That's unusual for that to happen. The daily training is they decide. They come in. The captains come in. They determine the objective for the day. They put the training regimen. They decide who should deliver it. It could be themselves. It could be a person in their staff. It could be somebody who comes in from outside. They're deciding that training. Maintaining company payroll and personnel records. They do that. They keep their own HR files. They keep their own supervisory notes and their own HR files in the station that contain things that the central HR file won't even contain, such as oral reprimands. They only stay in the station because they get to pull them out after a year. Handling community complaints. Again, the record shows that they do that. Preparing budgets and controlling expenditures. Many captains, we cited this in our brief, put on their resumes, I prepared the budget, and they do. They received a memo that says you are an important part of the budgeting process. Tell us what your station needs. They have a station fund and they have an operational fund. The station fund is left to them to administer. One of the captains bought a $5,000 kitchen table out of that station fund without anybody blinking an eye because they get to administer that fund. That's the donations you send in to your local fire department. They keep that. They administer all those funds in that. And they get to make requests for expenditures out of the operational budget. Ensuring operational readiness through supervision and inspection of personnel, equipment, and quarters. Again, if you read any of their job applications, their resumes, their testimony, they said operational readiness is where they spend most of their day. So running a station, again, you cannot get away from West, Hartman, or IAFF. If you agree that those cases are still good law, there's no way to distinguish these captains. The only way you get there is if you decide that the first responder regulation was a change of law contrary to what the Department of Labor itself is saying, that it was not a change of law. Again, also on the list, deciding how and where to allocate personnel. The captains decide the assignments. So while Ms. Elkin said there are minimum staffing on the engines, they're not in terms of the minimum staffing rule says an officer. So in some stations, for example, Plaintiff Higginbotham, in his station, he decides he's not riding the engine, he's going to ride the hazmat unit. In Plaintiff Rob's station, she's riding the medic truck, she's not riding the engine. So it's up to them to decide the assignments. Managing the distribution of equipment, maintaining inventory of property and supplies, directing operations at crime, fire, accident scenes. This was listed as an exempt task in the preamble, directing operations at the scene. And in every single one of these 21 discovery plaintiffs that we were allowed to take discovery from said, I am the incident commander at medical calls. And we know from the record that medical calls comprise 70% of what they respond to. They're the incident commander at 70% of the calls they go out to. Fires, which is the example that Ms. Elkin likes to come back to, are less than 10% of what they go to. And they may be the incident commander, according to their testimony and their interrogatory answers. They can be, depending on the order in which the engines arrive at a fire. But that is a very small percentage of what they actually, what their operational field role is. And, again, if we know that at a scene, supervising a scene is an exempt task, then the line wasn't redrawn in 2004. Your Honor asked whether it was disputed in terms of how little time they spent filling out the evaluations. The question that was raised to their counsel was, how long does it take you to fill out the evaluation? Well, of course it's not going to take them more than a couple hours a year because they're doing it at the end of the year. But in terms of the other testimony, the daily observation that they make, the daily supervisory notes that they keep, the daily adjustment in the training and the discipline that they hand out, it happens every day. That is their job to supervise 6 to 18 personnel. In terms of discipline, are they allowed to discipline people without approval from higher up the chain? Formal discipline, there's a dispute in terms of whether they're allowed to. There's no dispute that they normally route it through the chain of command on formal discipline. But as one of their captains testified, if we can handle it with a fly swatter, we don't need a shotgun, and they try to avoid. Because he said, to me, even an oral reprimand, which only stays in the file for a year, is part of the cascade of progressive discipline. So if we can avoid issuing formal discipline, we do. And you can see, we have many, many emails in the record of where they're doing just that sort of thing, trying to avoid getting people into that oral, because the first step is oral, then it's written, and then it's a third offense, and then it's a fourth offense that leads to a suspension. So they really try to avoid that. And even having an oral discipline in your file will keep you from getting a promotion. And in fact, one of the plaintiffs, Mr. Conrad, or Captain Conrad, was told, there's a long email that's in the record, I can give you the site, where he's told, hey, you're having all these problems with this subordinate in your station, but if you issue her written discipline, we're going to be before civil service, so you need to make sure that you have all your ducks in a row. And so he was working through that. And if she loses a promotion, we're going to be before civil service. So it's well understood, and the Chief Klaassen also testified, that standing discipline is the sole reason why someone will not get promoted off the promotional exam list. And again, the promotional exams also are telling, because they test their ability to run the station. They test their ability to administer discipline and to provide recommendations on discipline. In fact, if you look at the exam scenarios that are in there and the evaluation sheets that follow, one of the questions on which the exam takers are rated is, did they make a recommendation for discipline, because that is expected for their job. And there are examples in the record when they didn't provide a recommendation, and their chief came back to them and said, give me a recommendation. What are you saying, what are you recommending should be done in this scenario? So to say that they're just the errand boys is not accurate. That is very disputed and doesn't jive with their own testimony. I want to also touch briefly on the administrative exemption. And we did argue the administrative exemption for the EMS supervisors and the safety officers. The district court didn't address that issue. And in the court's defense, this case until today was about the first responder regulation. Until today, the sole focus of the plaintiff's case was the first responder regulation changed everything, because I believe they were reading the regulation literally as Judge Harris, you were. If you look at it, it's confusing. I grant that. But what we have is we've got what the DOL said in 2004. We've got 11 years post-rule. They haven't gone to any fire department and said, hey, you know what, I know you were under this pre-2004 law. You've been doing it wrong all along. Captains, we're consistent, and that's also in the record. The county surveyed the other departments in the area. And while some have decided as a matter of relations with their employees to provide it, many of them are deciding the line where we were. Can I just go back to the district court sort of skipped over the administrative exemption? And you say that's because it seemed like it was all about the first responder regulation. But that covers the administrative exemption too, right? I don't get it. It does. It does. And he didn't specifically address those factors because, again, if you look at the briefing in the district court, and even now, you know, the administrative, the safety officers, the EMS supervisors get sort of the back-of-the-hand treatment, even in the plaintiff's briefing, because they are the small component of this group. But the EMS supervisors are part of the battalion management team. They drive alone in SUVs. They don't have any staff. They don't go out. I mean, our data, as we provide it, shows that they spend 70 minutes on the road, you know, responding to emergencies, and they only arrive 60 percent of the time. The safety officers only arrive 35 percent of the time. They're not doing emergency response. What are they doing? EMS supervisors are administering EMS quality for the entire battalion of five to six stations that they manage with the battalion chief. And they're reviewing all the patient care reports. They're ensuring that the EMS providers in the battalion are trained. They are dealing with the medical community. I do – I'm sorry, I just have a – thank you for realizing that. I just have this question, and I'm not that familiar with all of these regulations and how they fit together, but in the administrative exemption examples, it specifically excludes public sector inspectors or investigators, such as fire prevention or safety inspectors. So does that have any bearing on this case? We have fire inspectors. They're not part of this lawsuit. The safety – but those would be inspectors who would be going after a fire scene was over to determine what the cause was. These safety officers are there to ensure personnel safety and determine how to ensure the safety of the men and women in the fire department. They don't – so safety and quality, which are the two things that the EMS and safety officers do, are the functional areas the Department of Labor's regulations say are administrative areas. And, in fact, the administrative exemption is supporting management, and one of the managerial tasks that's defined in the regulations is ensuring the safety of the men and women who work, you know, the safety of the men and the personnel. So they use their judgment and discretion to determine whether this particular scene is safe, they should be doing something else, was this accident preventable? You know, someone nearly died in a fire. Could we have done better? But they're not investigating? No. Okay. I see my – I'm sorry, they're not investigating the cause of the fire. They're investigating what is in their purview in terms of if they're on a close call committee or the Accident Review Board, they would be doing investigation in that respect, but not in the way that's in the regulation. I see that my time is up. Thank you. Ms. Elkin. I think I want to start by addressing Judge Traxler's questions about isn't this really just a function of firefighting, how much time they're back at the station and not, thank God, 75% of their time going out and fighting fires in Fairfax County. You're not the first judge to sort of analyze that. There's a decision called Barrows v. the City of Chattanooga where the case presented identical facts to the ones here. There was a captain. He was the highest-ranking officer in the station. He supervised lower-ranking officers. He reported directly to the battalion chief. He was assigned to an apparatus. He worked with his subordinates every day. He and the rest of his team spent more time in the station than in the field because that is the nature of the job. And when dispatched, the Barrows captain rode on the apparatus with the other members of his team and he participated in firefighting activities. The court in that case said that while running into burning buildings or performing CPR may not constitute the largest majority or percentage of the plaintiff's time, this is because of the nature of firefighting. And this is a quote, The nature of plaintiff's job, as is the nature of the job of every front-line firefighter, is generally to wait. Any given day for a firefighter, they consist of extended periods of boredom, punctuated by periods of urgency and moments of terror. Simply put, plaintiff and his subordinates were tasked with the responsibility of interrupting whatever other task or activity they may have been involved in to respond to the fire or emergency call. Thus, plaintiff's firefighting duties were clearly the most important duties that he performed, and the same is true here. The next, I think I want to Is that a test of primary duty, what you would stop doing? I think it is in the To do something else. I think that's certainly a fair test of what is the most important duty. What do you put aside? What do you drop in order to do something else? And what do you drop every single time the tone goes off? You drop everything. That's the most important thing they do, and they go on these calls to be the leader on the call, to direct the work in the field. So I think that is a fair assessment of primary duty in the context of the first responder regulation and in the context of what these men and women do every day in the field. Okay. To be the devil's advocate, we know through the history of this department and most departments how much time generally is spent fighting fires and how much time is generally spent obviously not fighting fires. So we know we have precedent and can predict pretty accurately how much time is going to be spent on each responsibility. So why don't we just look at that and not worry about how much time is actually spent on a fire or whether or not it might be more or less. Well, I think the Department of Labor would say that time is not the most important thing. The Department of Labor says, and it's amicus brief here, that you look to what is the most important duty. And because of the nature of firefighting, they need to be at the station, these captains, in between the fires that they're running and the emergency calls that they're running so that they can come to the next one. Nobody can predict when the next fire is going to happen or how long it will take. So their primary job duty is to be ready through the training and the physical fitness and then to respond as efficiently and safely as possible. I would like to also address the concurrent duty question I think Judge Harris asked. The Department of Labor has very clearly stated that it doesn't apply in the first responder context. In the Mullins case, the Department of Labor submitted an amicus brief in the Second Circuit Court of Appeals, and we would commend you to that. We cite it in our briefs. And the court found in that case, based on the Department of Labor, that the police sergeants who spend the same amount of time in the field as their subordinates, but who had extra duties including doing performance appraisals on a monthly basis, issuing reports to commanding officers, being responsible for subordinates, their appearance, punctuality, attendance, productivity, good order, and discipline, these guys, these sergeants, were nevertheless non-exempt because their primary job duty was law enforcement. And the same is true here. And the non-exempt work that the sergeants performed in that case, even while they were performing exempt managerial work, they set aside the managerial work and said the primary job duty is law enforcement and they are not exempt, they're entitled to overtime pay. So we respectfully request here that you reverse the lower-course decision and you enter summary judgment in the captain's favor. Thank you.
judges: William B. Traxler, Jr., Stephanie D. Thacker, Pamela A. Harris